FRANK LEROY *v.* STATE COMPENSATION COMMISSIONER

(No. 7414)

Submitted October 26, 1932. Decided November 15, 1932.

*Burnside & Hall* and *Homer Strosnider,* for appellant.
*H. B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, for State Compensation Commissioner, and *Tusca Morris,* for Consolidation Coal Co.

Maxwell, Judge:

Claimant was denied compensation because the commissioner was of opinion that his injury was not received in the course of and resulting from his employment. This appeal followed.

Claimant contends that he received an injury to his right eye while working as a coal loader in a mine of the Consolidation Coal Company in Harrison County in the forenoon of July 31, 1931. He stated that in endeavoring to place a large lump of coal on the top of an already well loaded steel mine car, a particle of coal struck him in the eye, causing the injury complained of. He worked until quitting time that day and the next, but has not worked since. He consulted an eye specialist August 2nd who found that a corneal ulcer was developing and removed "an ordinary black looking foreign body, whether coal or some other substance I don't know" from the eye. Claimant consulted two other specialists and a physician all of whom treated his eye. On August 10th one of the doctors advised him that the eyeball should be removed. This was done September 9th.

Claimant did not report the injury to the company until about August 18th. He told the doctors when he first consulted them that he received the injury to his eye at home. A son who accompanied him on these visits said that his father received the injury at home. Another son also told the chief clerk of the company, first by telephone and later while calling at the office, that his father had sustained an injury to his eye while working at home. Claimant admits that he said nothing about the injury to his "buddy" with whom he worked. His "buddy" corroborated him in this and stated further that although he worked with him that day and the day following, he observed nothing unusual about the eye.

It appears that about August 12th, while calling at the office of one of the doctors for treatment, claimant was informed by the doctor that if he had received the injury in the mine he would be entitled to compensation. (Claimant had not yet intimated to any of the doctors that he was injured in the mine.) It is significant, however, that about a week after this information concerning compensation was given him, claimant, on August 18th, together with some

members of his family and a friend, called at the mine office and informed the chief clerk that the injury complained of was in fact received in the mine July 31st; that claimant's prior statements to the effect that he was injured at home were misrepresentations; and that he had not reported the injury when it was sustained and had represented that its was received at his home because he at first thought it too trivial to report and hence might result in losing his job. It appears that, sometime prior to the date of the alleged injury, he had neglected to report a minor knee injury for which he ''was disciplined two days''. The fact that this man had been disciplined for not reporting a minor injury was all the more reason why, under normal human reactions, he would have been prompted to report his alleged eye injury without delay. In such situation, his not having reported an injury to his eye argues strongly that he did not receive it in the course of and resulting from his employment.

According to the testimony of several of claimant's witnesses, claimant, from the date of the alleged injury, although not reporting it, stated that he received the injury in the mine. One witness stated that he saw claimant as he, claimant, came from the mine on the day of the alleged injury; that he had ''his hand on his eye'' and said he ''got hurt in the mine.'' Another witness testified that he met claimant on his way home and that he, claimant, said he got a piece of coal in his eye while working in the mine. These two witnesses experienced difficulty in fixing the date on which these statements were made to them by claimant. The members of claimant's family, about five or six in number, stated that he informed them upon arriving home from work that he had received an injury that day while working in the mine. Substantial citizens of Clarksburg and vicinity testify to claimant's reputation for honesty and integrity and state that, in conversation with them shortly after the date of the alleged injury, he informed them that he had been injured in the mine but would not report it for fear of losing his job.

The doctors are in accord that the ulcerated condition of claimant's eye came about as a result of an injury.

In the light of the foregoing, can we say that the commissioner was plainly wrong in his finding? Is the finding at

variance with the plain preponderance of the whole evidence? We would not be warranted in answering in the affirmative. The only direct evidence that claimant received the injury complained of in the mine is his own. His "buddy" who worked with him knew nothing of the injury and, although working with him for a day and a half thereafter, he observed nothing indicating that the claimant had received an injury to his eye. Even though this witness and claimant spoke slightly different dialects of the Italian language, in view of the fact that they had worked together for five or six months prior to the date of the alleged injury, we are satisfied that there is nothing in claimant's contention that he did not tell witness of the injury because it was difficult to make him understand. Certainly there was some way by which claimant could have informed him of his injury had he been desirous of doing so, even if his words had not been clearly understood.

Claimant had been working for the coal company for five or six years prior to the date of the accident. It is shown that the company maintained a first aid station in very close proximity to where he was working when he claims to have been injured. He admits that the company offered instruction in receiving and administering first aid. He knew of the necessity for reporting an injury and receiving first aid. He did not report his alleged injury nor did he avail himself of the opportunity to receive first aid at the station provided for such purposes in the mine. While it is true that liberality should be employed in construing the workmen's compensation act, it is likewise true that this court should not, in a spirit of unauthoritative generosity, and in a case of doubtful propriety, assume responsibility for an application of the fund against the finding of the commissioner.

The great difficulty is that the claimant's present contention that he was hurt in the mine is not only not adequately supported by independent evidence, direct or circumstantial, but is at variance with the reiterated earlier statement of the claimant that he was hurt at home, and with the conspicuous circumstance that his "buddy" knew nothing of the alleged injury. Much of the testimony upon which claimant relies as corroborative of his present contention is based entirely upon his own self serving declarations.

214

We cannot say that the finding of the commissioner is not supported by substantial evidence or that it is contrary to a plain preponderance of the whole evidence. His finding must therefore be affirmed. *Conovas* v. *Ott*, 108 W. Va. 397, 151 S. E. 309, and cases there cited.

*Affirmed.*